IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGUS, INC., d/b/a PanAm International Market<br>4801 Michigan Avenue, N.E.<br>Washington, D.C., 20018,<br><br>    Plaintiff,<br><br>    v.<br><br>ED SCHAFER, Secretary of Agriculture,<br>14th and Independence Avenue, SW<br>Washington, DC 20250,<br><br>    Defendant | **RECEIVED**<br>**FILED**<br>FEB 15 2008<br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT<br><br>Case: 1:08-cv-00266<br>Assigned To : Walton, Reggie B.<br>Assign. Date : 2/15/2008<br>Description: Admin Agency Review |

## COMPLAINT FOR RELIEF FROM FOOD STAMP PROGRAM PENALTY

Angus, Inc., doing business as PanAm International Market, by its undersigned attorney, complains of defendant as follows:

### NATURE OF THE CASE

The United States Department of Agriculture ("USDA") operates the food stamp program, a nutrition assistance program under which low income families and individuals are provided coupons that they can exchange for food in retail food stores and elsewhere. Under the Food Stamp Act of 1977 (7 U.S.C. § 2011 *et seq.*), the Secretary of Agriculture is authorized to impose penalties (including monetary fines and suspension of the right to participate in the food stamp program) on retail food stores that violate the provisions of the Act and the regulations issued under it (7 C.F.R. part 271, *et seq.*). In this case, USDA disqualified PanAm International Market from participating in the food stamp program for six month as penalty for accepting food stamp coupons for a very small amount of

mundane nonfood kitchen items, bar soap, and phone cards. The assessment of this penalty is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law. Further, it is not soundly grounded on the facts, is excessive, and is inappropriate in the circumstances of the case. In its *de novo* review of the matter, this court should reduce the penalty to one that more closely reflects the magnitude of the violation.

## JURISDICTION

1.  Jurisdiction is founded upon 5 U.S.C. § 702, 28 U.S.C. § 1331, and 7 U.S.C. § 2023(a)(13).

## VENUE

2.  Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b) and (e), as the defendant's agency, USDA, is located in the District of Columbia and a substantial part of the events or omissions giving rise to the plaintiff's claim occurred in the District of Columbia.

## PARTIES

3.  Plaintiff, Angus, Inc., is a corporation incorporated and doing business in the District of Columbia. Angus, Inc., operates a retail food store, PanAm International Market ("PanAm"), at 4801 Michigan Avenue, N.W., Washington, D.C., 20018.

4.  Angus, Inc., opened PanAm for business in November 2005, and has eight employees working in the store.

5.  Edma Maldonaldo, Vice President (and with her husband, Luis Maldonaldo, owner) of Angus, Inc., has managed PanAm since it opening. Prior to the opening of PanAm, Ms. Maldonaldo had worked for six years as a cashier and supervisor

of cashiers at Gelaud Food Corp. ("Gelaud"), a retail food store in the District of Columbia that accepted food stamp coupons. Based on that experience, she trains and supervises PanAm's cashiers.

6. The Defendant, Ed Schafer, is the secretary of the United States Department of Agriculture and is the federal official responsible for the administration of the statutes, regulations, and program that are the focus of this action.

7. The Food and Nutrition Service ("FNS"), an agency of USDA, administers the food stamp program under a delegation of authority from the Secretary of Agriculture.

### ADMINISTRATIVE REQUIREMENTS MET, DE NOVO JUDICIAL REVIEW REQUIRED

8. By letter dated September 12, 2006, the FNS charged PanAm with accepting food stamp coupons as payment for nonfood items, to which PanAm responded with information and arguments in opposition to the accusation.

9. By letter dated September 19, 2006, FNS found that PanAm had accepted food stamp coupons as payment for nonfood items and assessed a penalty of disqualification of PanAm from participating as an authorized retailer in the food stamp program for six months. On September 21, 2006, PanAm requested an administrative review of that decision.

10. An FNS Administrative Review Officer conducted an administrative review, but did not give PanAm a hearing to present its defenses. On November 1, 2007, the Administrative Review Officer issued a Final Agency Decision that affirmed FNS's initial decision to disqualify PanAm from participating as an authorized retailer in the food stamp program for six months.

11. Under section 14(a)(12) of the Food Stamp Act (7 U.S.C. § 2023(a)(12)) and USDA's food stamp regulations at 7 C.F.R. § 278.6(n), such Final Agency Decision completed the administrative review process and, as such, gave rise to PanAm's right to judicial review (7 U.S.C. § 2023(a)(13)). Further, under section 14(a)(15) of the Act (7 U.S.C. § 2023(a)(15)), such judicial review shall be a trial de novo in which the court shall determine the validity of the questioned administrative action in question.

12. On November 20, 2007, PanAm, acting *pro se*, filed an action in the United States Court of Federal Claims seeking judicial review of the final FNS decision. That filing was within the 30 days required under section 14(a)(13) of the Food Stamp Act (7 U.S.C. § 2023(a)(13)) for filing a suit for judicial review of a disqualification penalty. A motion for leave to withdraw that action is being filed with the United States Court of Federal Claims at the same time as this action is being filed as a substitute for that action.

## BACKGROUND ON FOOD STAMP PROGRAM PENALTIES

13. The food stamp regulations, at 7 C.F.R. § 278.6(e), establish the standard under which a retail food can be (but is not required to be) disqualified from acting as an authorized food stamp retailer for six months, as follows: "if it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management." 7 C.F.R. § 278.6(e)(5).

14. The food stamp regulations provide that FNS, in determining whether to disqualify a retail food store, shall consider the nature and scope of violations committed by the employees of the store, <u>any prior action taken by FNS to warn the firm about the</u>

4

possibility that violations are occurring, and any other evidence that shows the store's intent to violate the rules. 7 C.F.R. § 278.6(d).

15. The food stamp regulations authorize, in lieu of disqualification, sending a firm a warning letter if violations are too limited to warrant a disqualification. 7 C.F.R. § 278.6(e)(6).

16. The food stamp regulations authorize the FNS to impose a civil money penalty in lieu of disqualification when the retail food store is selling a substantial variety of staple food items and its disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices. 7 C.F.R. § 278.6(f).

17. The food stamp regulations at 7 C.F.R. § 279.5(c) provide that the Administrative Review Officer handling an administrative review of a penalty assessed by FNS shall determine if circumstances warrant a civil money penalty under the 7 C.F.R. § 278.6(f) hardship rule described in the preceding paragraph.

## FACTUAL ALLEGATIONS

18. PanAm International Market opened for business in November 2005. It is a full-service retail food store that offers an ample variety of staple food items. Also, it caters to Hispanic customers by offering Hispanic foods and employing staff who are fluent in Spanish. PanAm is the only Hispanic-oriented food store in that part of the District of Columbia offering a substantial number of Hispanic staple food items.

19. At no time during her six-year tenure at Gelaud or at PanAm prior to September 12, 2006, was Ms. Maldonaldo aware that any cashier under her supervision

might have accepted food stamp coupons for nonfood items; nor did she ever accept such coupons for such nonfood items.

20. Neither PanAn, nor Mr. or Mrs. Maldonaldo, has ever been determined to have violated the Food Stamp Act or the regulations issues thereunder, or even been accused of such.

21. The alleged sales of nonfood items in exchange for food stamps occurred during the period April through July 2006. Having just opened five months before the first such sale, PanAm was still in the process of developing quality control, employee supervision, and other oversight procedures. Ms. Maldonaldo was in the process of training the new employees primarily by on-the-job training.

22. With respect to the handling of food stamp purchases, Ms. Maldonaldo clearly instructed employees serving as cashiers that food stamps can only be used for food purchases, using in her instructions the materials FNS had provided her. Ms. Maldonaldo's training of cashiers was thorough and her monitoring of their handling of food stamps at the appropriate level, based on her six years experience in another retail food store, where there had never been a problem with food stamps being accepted for nonfood items.

23. The FNS offered no training sessions to PanAm officers or cashiers on the handling food stamps, nor did it provide written materials for use by PanAm's cashiers in Spanish. Several of PanAm's cashiers were only fluent in Spanish.

24. The nonfood sales for food stamps that FNS charged PanAm with consisted of 19 items, in all valued at approximately $55, including four phone cards that together were worth $30. The alleged purchase of these items took place over the course

of eight visits to PanAm by an undercover FNS investigator. The nonfood items that were purchased ranged from toilet paper to oven cleaner to sandwich bags to a dish scrubber to a bar of soap. When the undercover FNS investigator tried to get a PanAm cashier to change food stamp coupons into cash, the cashier turned the investigator down.

25. On information and belief, all eight transactions were handled by one cashier who is no longer employed by PanAm, and they took place when Ms. Maldonaldo was not present in the store.

26. At no time after the undercover investigator began to purchase with food stamp coupons items alleged to be nonfood items did FNS advise PanAm of the perceived problem, issue it a warning, or otherwise give PanAm the opportunity to address the problem.

27. Since PanAm has opened for business, on information and belief, PanAm has engaged in many food stamp transactions with customers in each of which there were dozens of items purchased and the total bill exceeded $100. A recent review of the cash register receipts for those of such transactions that were not destroyed by water damage (many records were destroyed in 2006 by water leaking through the roof of the building which PanAm rents and in which the store is located, including cash register tapes) showed that, in none of them, were there any transactions in which nonfood items were purchased with food stamps. In some instances, the cash register receipts show that whenever nonfood items were accidentally rang up the cashier cancelled the sale before the transaction was finalized.

28. Since being apprised by FNS that some nonfood items might have been purchased at PanAm with food stamp coupons, PanAm has redoubled its efforts to

prevent such sales from occurring, including designation of one specially trained cashier to handle food stamps and installing new cash register software to facilitate tracking purchases. PanAm did this on its own, without any guidance or assistance from FNS.

29. A large percentage of PanAm's sales involve food stamp purchases. Losing the ability to accept food stamps will seriously harm PanAm's financial status and adversely affect its ability to continue to operate as a full-service grocery store.

30. If PanAm closes, literally thousands of Hispanic residents in far Northeast Washington, many of whom can only speak a little English, will be deprived of the only food store in the area that sells Hispanic staple foods and has a staff all of whom are conversant in Spanish.

31. The Administrative Review Officer, in considering PanAm's petition for administrative review of the FNS disqualification decision, did not make an independent determination of whether a money penalty should be substituted for disqualification to avoid hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices; nor did he consider whether a warning letter should be issued in lieu of a disqualification, prior to affirming the FNS initial decision. On information and belief, FNS did not consider whether a warning letter should be issued in lieu of disqualification prior to issuing its initial decision to assess a penalty of six months disqualification, nor did it consider the remedial steps that PanAm had taken to prevent any nonfood sales in exchanges for food stamp coupons in the future.

## COUNT I

**(Violation of the Administrative Procedure Act)**

32. The plaintiff re-alleges paragraphs 1 through 31 as if fully set forth herein.

33. FNS's failure to consider whether a warning letter should be issued in lieu of disqualification and to consider the remedial steps that PanAm had taken to prevent any nonfood sales in exchanges for food stamp coupons in the future before determining the penalty was arbitrary, capricious, and unwarranted by the facts.

34. The Administrative Review Officer's failure to consider issuing a warning letter in lieu of disqualification was arbitrary, capricious, an abuse of discretion, and unwarranted by the facts.

35. The Administrative Review Officer's failure to independently determine whether a money penalty should be substituted for disqualification to avoid hardship to food stamp households was arbitrary, capricious, and otherwise not in accordance with the law.

## COUNT II
### (Violation of the Food Stamp Act And Regulations)

36. The plaintiff re-alleges paragraphs 1 through 31 as if fully set forth herein.

37. No disqualification penalty should lie against PanAn because there is insufficient evidence that any purchase of nonfood items with food stamp coupons was due to carelessness or poor supervision by the PanAm's ownership or management.

38. No disqualification penalty should lie against PanAn because the evidence indicates that a warning letter, as authorized by the Food Stamp Act, is the appropriate response to the alleged purchases of nonfood items with food stamp coupons.

39. No disqualification penalty should lie against PanAm, and in lieu thereof a monetary penalty would be more appropriate, because the evidence indicates that a disqualification would cause hardships to Hispanic food stamp households because there

9

is no other authorized retail food store in the area selling as large a variety of Hispanic staple food items at comparable prices.

## CLAIM FOR RELIEF

Wherefore plaintiff respectfully requests this Court to:

1. Instruct FNS to issue a warning letter in lieu of disqualification for the food stamp violations alleged to have been committed by PanAm as described in this complaint; or

2. in the alternative, substitute a money penalty for disqualification to avoid hardship to Hispanic food stamp households because there is no other authorized retail food store in the area selling as large a variety of Hispanic staple food items at comparable prices; and

3. order such other and further relief as the Court deems just and proper.

Respectfully submitted,

Phillip L. Fraas
818 Connecticut Avenue, NW
12th floor
Washington, DC 20006
202-223-1499
pfraas@phillipfraaslaw.com
fax 202-223-1699
ATTORNEY FOR PLAINTIFF
D.C. Bat No. 211219

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

ORIGINALS 08-266
RBW

## I (a) PLAINTIFFS
Angus, Inc., d/b/a PanAm International Market

## DEFENDANTS
Ed Schafer, Secretary of Agriculture

CLERK
US DISTRICT & BANKRUPTCY COURTS
2008 FEB 15 PM 4:25
RECEIVED

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Dist. of Columbia  11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Phillip L. Fraas
818 Connecticut Avenue NW, 12th floor
Washington, DC 20006
202-223-1499

ATTORNEYS (IF KNOWN)
Meredy...
U.S. De...
1100 L...
Washin...
202-35...

Case: 1:08-cv-00266
Assigned To : Walton, Reggie B.
Assign. Date : 2/15/2008
Description: Admin Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP (FOR PLAINTIFF AND O...

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
- ☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ● C. Administrative Agency Review
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes:
- ☒ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

①

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
5 USC 702, 28 USC 1331, 7 USC 2023--De novo review of food stamp penalty assessed by USDA, as authorized by Food Stamp Act of 1977.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____  Check YES only if demanded in complaint
JURY DEMAND: YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE  Feb. 15, 2008   SIGNATURE OF ATTORNEY OF RECORD  /s/ [signature]

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.